"Covenant and agreement made and entered into this 13 November, A.D. 1800, by and between John Wallace of Shell Castle, in the county of Carteret, and John Gray Blount of the town of Washington and county of Beaufort, of the one part, and James Taylor, surveyor of the port of Beacon Island, and, in this instance, special agent for and on the part of the United States, of the other part: Witnesseth, that for and in consideration of the sum of $2,800 paid by him, the said (182) James Taylor, for the United States, to him, the said John Wallace, the receipt whereof is hereby acknowledged, they, the said John Wallace and John Gray Blount, have sold to him, the said James Taylor, for the United States, 80,000 bushels of shells for the works intended to be erected at Beacon Island, which shells the said James Taylor, *Page 143 
or his successor, or any and every person appointed by him or by the United States, may take at any time, or all times, until the same be fully completed, from the following places: 40,000 bushels, or one-half of the quantity now sold, to be taken from the rocks adjacent and contiguous to Beacon Island and Shell Castle, as he may choose, and 40,000 bushels, or the other moiety, to be taken from Shell Island; the quantities taken to be ascertained by the usual mode of measuring shells, or by any other which the said parties may hereafter agree on to facilitate and expedite the delivery.
"It is further covenanted and agreed upon by and between the said parties, that the said James Taylor may add to, or diminish from, the said quantity, to wit, 80,000 bushels, as he or his successor may hereafter think proper or find convenient; and should he add to the quantity, it is hereby covenanted that he shall have any further or larger quantity at the same prices with those now sold to him, which are three cents for the shells taken from Shell Island and four cents for the shells taken from the rocks per statute bushel, measured as customary: and in the event of his not taking the whole quantity now covenanted for, the said John Wallace and John Gray Blount are hereby bound to repay him at the rates aforesaid for such quantity so not taken.
"And the said John Wallace and John Gray Blount further covenant and agree to and with the said James Taylor that should any let, hindrance, or molestation prevent him, the said James Taylor, or his successor, or any person acting by or under their authority, or by virtue of this covenant, from taking the quantity or any part thereof from Shell Island now covenanted for, by reason of any claim made or to be made to the said island, then and in such case the said James Taylor or his successor may make up the quantity so deficient in consequence (183) of such hindrance from the rocks adjacent and contiguous to Shell Castle and Beacon Island aforesaid at the rate of four cents per bushel as aforesaid; and the said John Wallace and John G. Blount bind themselves by these presents to defend any and every action or actions, suit or suits, which may be brought against him or his successor, or any other person acting by or under their authority, or by virtue of this covenant.
In witness whereof, the parties aforesaid have hereunto set their hands and affixed their seals, and have interchangeably agreed upon the said covenant.
And the said United States say that they did not take the whole quantity of shells aforesaid, to wit, 80,000 bushels; and that in fact they did only receive 5,000 bushels parcel thereof, to wit, 2,500 bushels from the rocks adjacent to Beacon Island and Shell Castle, and 2,500 bushels from *Page 144 
Shell Island; and as to the residue, to wit, 75,000 bushels, they did refuse to take the same, to wit, on 10 June, 1802, of which the said Blount then had notice. And that they, the said United States, on the said 10 June, 1802, demanded of the said Blount repayment for the quantity so not taken, which he refused, etc. Damages, £ 5,000.
And the defendant demurs, and shows as the cause of demurrer that the United States are not a party to the said indenture, and cannot maintain any action thereon in their own name.
The principle which has been so fully illustrated by the defendant's counsel is doubtless a correct one, and is well established by the authorities cited. But whether a deed be made between parties, and who the parties are, must depend on a proper construction of the deed; and when we have once ascertained who the parties are, it follows that a stranger cannot sue on a covenant contained in it, though made for his benefit. The United States cannot be considered as strangers to this deed, because they are formally, as well as substantially, made parties to it; formally, since it is made by the defendants of the one part, and a public officer, a special agent of the United States, of the other part; substantially, because it relates altogether to the carrying on of a public work, in which the agent as an individual cannot possibly have a personal interest. Indeed, the observations made by the Court in Pottsv. Lazarus, ante, 180, apply fully to this case; for if Lazarus was not a party to the deed, the reasons leading to that conclusion must also prove that the United States are a party to the deed in question. As to an agent's liability to be sued, the case of a public agent is stronger than that of a mere private one, because the former is never held liable where it appears that he contracted on the behalf of Government, though cases have occurred in which a private agent has been held liable to (186) an action, in consequence of the peculiar and express terms of the contract he has entered into.
We are of opinion that the demurrer must be overruled.
NOTE. — See Stanly v. Hawkins, 1 N.C. 55; Potts v. Lazarus,ante, 180; Hite v. Goodman, 21 N.C. 364. *Page 145